# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF NORTH CAROLINA
## CHARLOTTE DIVISION
## CIVIL NO. 3:06CV78-R

| | | |
|---|---|---|
| **PARKDALE AMERICA, LLC and** | ) | |
| **PARKDALE MILLS, INC.,** | ) | |
| | ) | |
| **Plaintiffs,** | ) | |
| | ) | |
| **vs.** | ) | **MEMORANDUM AND ORDER** |
| | ) | |
| **TRAVELERS CASUALTY AND** | ) | |
| **SURETY COMPANY OF AMERICA,** | ) | |
| **INC.,** | ) | |
| | ) | |
| **Defendant.** | ) | |
| | ) | |

**THIS MATTER** is before the Court on the Defendant's "Motion to Compel Discovery Responses" (document #19) filed November 22, 2006; and Plaintiffs' "Motion for Protective Order" (document #29) filed December 8, 2006; as well as the parties' associated briefs and exhibits. See documents ## 20, 21, 30-33, 39, 40, 45, and 46. Pursuant to 28 U.S.C. §636(b)(1)(B), on October 10, 2007 these motions were referred to the undersigned Magistrate Judge, who on November 14, 2007 conducted a hearing attended by the Plaintiffs and their counsel, Susan H. Boyles and James H. Kelly, Jr., both of the law firm Kilpatrick Stockton, LLP; and the Defendant and its counsel, Stephen B. Stern of Ross, Dixon & Bell, LLP, and Stephen D. Allred of Helms, Mulliss & Wicker, PLLC.

Having carefully reviewed the pleadings, record, arguments of counsel, and applicable authority, the Court will grant in part and deny in part the parties' Motions, as discussed below.

## I. FACTUAL AND PROCEDURAL HISTORY

In this action, the Plaintiffs, Parkdale America, LLC and Parkdale Mills, Inc., related North

Carolina corporations that manufacture and sell cotton yarn, seek a declaratory judgment that pursuant to an insurance contract between the parties, the Defendant Travelers Casualty and Surety Company of America, Inc., a Connecticut insurance company, is obligated to defend and indemnify the Plaintiffs concerning claims in ten underlying antitrust lawsuits. The Plaintiffs also assert state claims for breach of contract, bad faith denial of insurance claims, and unfair and deceptive trade practices.

For a more complete statement of the factual and procedural background, see "Memorandum and Order" filed October 26, 2007 (document #55) (denying Defendant's "Motion to Compel Deposition of John Smeak," and holding in abeyance Defendant's "Motion for Adverse Inference"), and "Memorandum and Order" filed October 30, 2007 (document #56) (granting Plaintiffs' "Motion to Compel Production of Information on Other Antitrust Claims").

Relevant to the subject Motions, the parties have already conducted substantial discovery, although the Defendant contends that most of what has been produced is of little evidentiary value in this action. In any event, to date and in response to the Defendant's First Set of Interrogatories and First Request for Production of Documents, the Plaintiffs represent that they have produced everything produced to the United States Department of Justice's Antitrust Division ("DOJ") after voluntarily informing DOJ that Mr. Smeak, then the Plaintiffs' Vice-President and President of Sales, may have unlawfully fixed cotton yarn prices and being conditionally accepted into the DOJ's Corporate Amnesty Program. The Plaintiffs also represented to the Court that they have produced everything they produced or received during discovery in the underlying antitrust actions. In the aggregate, the Plaintiffs' production includes more than 32,000 pages of documents and 550,000 electronic "pages" of Mr. Smeak's emails, a substantial majority of which were produced from the

files of the Plaintiffs' counsel in the antitrust actions, Reed Smith, LLP.

As developed during the hearing, the parties' present discovery dispute involves additional information and documents, much of which remains in Reed Smith's files (elsewhere described as approximately 100 "banker's boxes"). The subject Interrogatories and Requests for Production of Documents, and the Plaintiffs' Answers and Responses, are reproduced below in their entirety:

> **Interrogatory 10.** Identify all persons who you believe were witnesses to or have knowledge of the events alleged in the Underlying Matters, and summarize the knowledge you believe each person possesses.

> **ANSWER**: Parkdale objects to Interrogatory No. 10 on the grounds that it may call for information prepared in anticipation of litigation and is therefore protected as work-product under Rule 26(b)(3) of the Federal Rules of Civil Procedure. Parkdale is relying on its counsel to investigate and advise it on all issues related to the Civil Antitrust Litigation and DOJ investigation. With regard to the DOJ investigation, Parkdale does not know the full extent of the government's investigation, nor does it know the identity of all the witnesses who may have been interviewed by the DOJ. Parkdale also does not know what information may have been developed in the Civil Antitrust Litigation because, with the exception of the Tennessee Litigation, it is no longer a party to those cases.

> Subject to those objections, Parkdale states that it believes that John Smeak has knowledge of the events investigated by the DOJ and the events alleged in the Civil Antitrust Litigation because he was involved in those events.

> **Interrogatory 11.** Identify, by providing the name, address and business telephone number, of any expert whose services Parkdale engaged in connection with the Underlying Matters, including, but not limited to, the experts at NERA, and provide a summary of the substance of the opinions the expert has reached or provided and the grounds for each opinion. Attach to your answer any and all documents prepared by, for or at the direction of any such experts identified in your answer, including, without limitation, any reports, and identify any documents reviewed or relied upon by any person identified in your answer.

> **ANSWER**: Parkdale objects to Interrogatory No. 11 on the grounds that it purports to call for the production of documents in response to an interrogatory. Any documents the Defendant wishes to request must be included in a separate Request for Production of Documents under Rule 34 of the Federal Rules of Civil Procedure and cannot be the proper subject of an interrogatory. Further, Parkdale objects to

3

Interrogatory No. 11 on the grounds that it is overbroad and calls for information prepared in anticipation of litigation and is therefore protected as work-product under Rule 26(b)(3) of the Federal Rules of Civil Procedure. Any persons or firms that Parkdale's counsel retained in the Civil Antitrust Litigation, including NERA, were retained as consultants only and were never designated as testifying witnesses. Therefore, any opinions such experts reached are work-product and are not discoverable. In addition, Travelers is estopped from contesting the amount of the settlement with the class-action plaintiffs because 1) it exceeds to [sic] coverage limits of Travelers' policy and 2) Travelers was invited to participate in the settlement discussions when they were occurring, but declined to do so. Parkdale moves the Court for a Protective Order with regard to any further response to this Interrogatory.

**Interrogatory 12.** Identify all persons who allegedly conspired with John Smeak in the alleged antitrust activity that is the subject of the Underlying Matters.

**ANSWER**: Parkdale objects to Interrogatory No. 12 on the grounds that it is overly broad, in that it purports to have Parkdale identify "all persons" who allegedly conspired with John Smeak in the alleged antitrust activity at issue in the DOJ Investigation and the Civil Antitrust Litigation. Parkdale is relying on its counsel to investigate and advise it on all issues related to the DOJ Investigation and the Civil Antitrust Litigation. As such, any information Parkdale may have obtained regarding the involvement of persons outside Parkdale has been obtained from counsel and is therefore protected by the attorney-client privilege and work-product privilege of Rule 26(b)(3). With regard to the DOJ investigation, Parkdale does not know the full extent of the government's investigation, nor does it know the identity of all the witnesses who may have been interviewed by the DOJ. Parkdale also does not know what information may have been developed in any Civil Antitrust Litigation because, with the exception of the Tennessee Litigation, it is no longer a party to those cases.

Subject to those objections, Parkdale states that to its knowledge, the only person associated with Parkdale whom Parkdale believes was involved in any alleged antitrust activity is John Smeak. Parkdale is unable to respond to this interrogatory as it relates to other persons and entities not associated with Parkdale. Parkdale refers Defendant to the complaints filed in the Civil Antitrust Litigation (which are public records) for allegations made by the plaintiffs against Parkdale and others in those actions.

**Interrogatory 13.** Identify when Parkdale first reviewed whether it had insurance coverage for each of the Underlying Matters.

**ANSWER**: Plaintiffs object to Interrogatory no. 13 on the grounds that it may call for information protected by the attorney-client privilege. Plaintiffs further object on

4

the grounds that the term "reviewed" is vague. Plaintiffs interpret this interrogatory to ask when a person associated with Parkdale looked at the Policy for the purpose of determining whether there may be insurance coverage for the Civil Antitrust Litigation. Subject to those objections and interpretations, Parkdale states that in the Fall of 2004, Daniel Wilson first provided the policy to counsel to determine if antitrust claims were covered, when he was prompted to do so after a discussion with Darwin Boyd, Parkdale's insurance broker. Prior to Mr. Wilson's discussion with Mr. Boyd, Parkdale was unaware that it had insurance coverage for the Civil Antitrust Litigation.

**Interrogatory 15.** Identify and describe all amounts paid or to be paid in settlement of the Underlying Matters for which you are seeking payment or reimbursement from Travelers and the bases for your belief that Travelers is responsible for payment or reimbursement of such amounts.

**ANSWER**: Plaintiffs object to Interrogatory No. 15 to the extent that it calls for information protected by the attorney-client privilege and/or prepared in anticipation of litigation and therefore is protected by as [sic] work-product under Rule 26(b)(3) of the Federal Rules of Civil Procedure. Parkdale is relying on its counsel for advice on insurance coverage issues, including the amounts of reimbursement to which it is entitled under the terms of the Policy. Further, Parkdale's claims are clearly set forth in the Amended Complaint.

By way of further response and subject to its objections, Parkdale states that it paid $7.8 million to settle claims made in In Re Cotton Yarn Antitrust Litigation, No. 1:04-MD-001622, which settlement was found to be appropriate and reasonable by a Court Order dated February 16, 2006. Parkdale is seeking indemnity from Travelers for this settlement, up to the limits of the Policy, because the Policy provides coverage for the settlement of these claims. Parkdale also reserves it right to seek coverage from Travelers for any amounts that may ultimately be paid in settlement of the Tennessee Litigation, or any other civil antitrust claims that may be brought against Parkdale, and the costs of defending any civil antitrust claims, up to the limits of the Policy.

**Request to Produce 3.** All documents relating to interviews and depositions conducted or taken in connection with the Underlying Matters, including notes of such interviews, transcripts of such depositions (including exhibits) in print and electronic form, and video and audio recordings of such interviews and depositions.

**RESPONSE**: The Plaintiffs object to Request for Production of Documents No. 3 on the grounds that it is overly broad, unduly burdensome, and requests information that is subject to the attorney-client privilege and/or work-product privilege of Rule 26(b)(3) of the Federal Rules of Civil Procedure. Plaintiffs do not have in their

possession any non-privileged documents that are responsive to this Request. Any interviews of Parkdale employees were conducted by attorneys at Reed Smith in the course of their representation of Parkdale in the DOJ Investigation and the Civil Antitrust Litigation, and therefore, are part of Reed Smith's file, are protected by the attorney-client and/or work-product privileges, and are not properly discoverable. To Parkdale's knowledge, there were no depositions taken in the Civil Antitrust Litigation. Parkdale moves for a Protective Order with regard to any further response to this Request.

**Request to Produce 14.** To the extent not encompassed by any other Requests, Parkdale's internal emails, memoranda and files relating to Parkdale's claims for insurance coverage made with regard to the Underlying Matters.

**RESPONSE**: Plaintiffs object to Request for Production of Documents No. 14 to the extent that it seeks information protected by the attorney-client privilege and/or the work-product privilege of Rule 26(b)(3) of the Federal Rules of Civil Procedure. Parkdale is relying on counsel for advice regarding coverage. Aside from counsel, Parkdale communicated with its insurance broker regarding coverage for the Civil Antitrust Litigation. These communications are contained in the broker's file, which has been previously produced. Parkdale is in the process of determining whether it has any additional non-privileged documents that are responsive to this Request. If so, they will be produced. Otherwise, Parkdale moves the Court for a Protective Order with regard to any further response to this Request.

**Request to Produce 18.** All documents referring, reflecting or relating to the terms and conditions of the Settlement Agreement. Your response should include, but not be limited to, all proposed, draft, or final term sheets and written agreements, and all notes, memoranda, or other documents reflecting offers to settle or compromise any of the claims asserted in the Underlying Matters.

**RESPONSE**: A copy of the Settlement Agreement and the Court Orders approving the Settlement Agreement are being produced at PM026602 - PM026618 and PM 026621 – PM 26645. Plaintiffs object to the remainder of this Request on the grounds that drafts, notes, memoranda and other documents reflecting offers to settle the claims asserted in the Civil Antitrust Litigation are protected by attorney-client privilege and the work-product privilege of Rule 26(b)(3) of the Federal Rules of Civil Procedure. Plaintiffs also object on the grounds that the Request is unduly burdensome and not relevant or likely to lead to the discovery of relevant evidence on the issue of coverage for antitrust damages under Travelers' policy. Travelers was invited to participate in the described settlement discussions and declined to do so, and therefore is estopped from now attempting to review and recreate all of the information leading to the final agreement, which was found to be reasonable and

6

appropriate by Judge James A. Beaty, U.S. District Court Judge for the Middle District of North Carolina.

**SUPPLEMENTAL RESPONSE**: See also PM 29716 – PM 29726.

**Request to Produce 19.** All documents referring, reflecting or relating to the negotiation of the terms and conditions of the Settlement Agreement. Your response should include, but not be limited to, all written agreements between or among any of the parties to the Settlement Agreement, and all notes, memoranda or other documents reflecting or memorializing any oral agreement or promise made by or between any of the parties to the Settlement Agreement with regard to the settlement and/or defense of the Antitrust Litigation, the Pennsylvania Action and/or the New Jersey Action.

**RESPONSE**: See response to Request for Production of Documents No. 18. Subject to those objections and the Protective Order, Parkdale is also producing certain written information exchanged during settlement negotiations with the plaintiffs in the class-action lawsuit. This information was previously provided to Travelers pursuant to a Confidentiality Agreement and is being provided again at PM27205 – PM27260, subject to the Protective Order.

**Request to Produce 21.** All documents referring, reflecting or relating to Parkdale's assessment or analysis, or any assessment or analysis prepared for Parkdale, of the exposure or potential liability, in connection with or arising from the Underlying Matters of: (a) Parkdale, and/or (b) any of the defendants named in the Underlying Matters other than Parkdale.

**RESPONSE**: Parkdale objects to Request for Production of Documents No. 21 on the grounds that it calls for information protected by the attorney-client privilege and/or prepared in anticipation of litigation and is therefore protected as work-product under Rule 26(b)(3) of the Federal Rules of Civil Procedure. Parkdale relied on its attorneys and consultants retained by their attorneys to assess Parkdale's potential liability in connection with the Civil Antitrust Litigation. Defendant's request clearly encompasses the research, thought processes, analysis, and advice of Parkdale's attorneys at Reed Smith, LLP and consultants who were retained by, and worked under the direction of, Reed Smith LLP. Such work-product is part of Reed Smith's file and is not discoverable. The persons Reed Smith retained to assist them in the case were retained as consultants only and were never designated as testifying witnesses. Therefore, the work done by these persons, including but not limited to, their analysis and opinions regarding Parkdale's potential liability, are work-product and are not discoverable. Other than the documents produced in response to Request No. 19, there are no non-privileged documents responsive to

section (a) of the Request and Plaintiffs move the Court for a Protective Order with regard to any further response to this portion of the Request.

Parkdale does not know what, if any, analyses were done with regard to the potential liability of any other defendants in the Civil Antitrust Litigation, and therefore, has no documents responsive to section (b) of the Request.

**Request to Produce 22.** All documents referring, reflecting or relating to Parkdale's assessment or analysis, or any assessment or analysis prepared for Parkdale, of any Loss, as defined by the Policy, incurred by Parkdale on account of the Underlying Matters, including, but not limited to, any documents reflecting any determination that any Loss was incurred by Parkdale.

**RESPONSE**: Plaintiffs object to Request for Production of Documents No. 22 on the grounds that it seeks information protected by the attorney-client privilege and/or the work-product privilege of Rule 26(b)(3) of the Federal Rules of Civil Procedure. The analysis or assessment of any "Loss," as that term is defined by the Policy, is the issue directly before the Court in this litigation. Parkdale is relying solely on its counsel for advice on the meaning of Policy terms and whether the Civil Antitrust Litigation is covered by the Policy. Defendant's request clearly encompasses the research, thought processes, analysis, and advice of Parkdale's attorneys at Reed Smith, LLP and Kilpatrick Stockton LLP regarding the coverage issues in this litigation. Such work-product is contained in the attorneys' files and is not discoverable.

Subject to that objection, Parkdale refers Travelers to the Court's Order in In Re Cotton Yarn Antitrust Litigation, No. 1:04-MD-01622, which approved Parkdale's payment of $7.8 million to settle the antitrust claims being made against it, and other public documents (already produced) that confirm Parkdale's payment. See also documents being produced in response to Request for Production of Documents No. 29, subject to the Protective Order. Parkdale reserves its right to seek other elements of its "Loss" from Travelers, including costs incurred in the defense of the Civil Antitrust Litigation, at the appropriate time.

**Request to Produce 27.**[1] All documents, including, but not limited to, emails, notes, memoranda, board and committee meeting minutes that refer, reflect or relate to the knowledge of any director, officer or employee of Parkdale of the price-fixing activity that is the subject of the Underlying Matters.

---

[1] During the hearing, the undersigned directed Mr. Stern to provide a single list of all Interrogatories and Requests to Produce which remained at issue. Although Mr. Stern omitted Request to Produce 27 at that time, he promptly notified chambers' staff of the oversight after the hearing, and requested its inclusion.

**RESPONSE:** The Plaintiffs object to Request for Production of Documents No. 27 to the extent that it calls for information protected by the attorney-client privilege and/or the work-product privilege of Rule 26(b)(3) of the Federal Rules of Civil Procedure. This request encompasses information developed by Parkdale's attorneys during the course of their representation of Parkdale in connection with the DOJ investigation, as well as the Civil Antitrust Litigation. This information is contained in the attorneys' files and is not discoverable. Plaintiffs move the Court for a Protective Order with regard to privileged materials.

With respect to other documents, the Request is overly broad and unduly burdensome, in that it would potentially require Parkdale to review all emails, notes memoranda, and other documents at the company during a five-year period to respond to this Request.

Subject to the objections, Parkdale states that it is in the process of reviewing corporate minutes to determine if there are any non-privileged, responsive documents. If so, those will be produced. Other non-privileged responsive documents regarding the activities of employee John Smeak have already been produced in response to other Requests.

**Request to Produce 28.** All documents exchanged between Parkdale's damages experts and Parkdale in connection with the Underlying Matters.

**RESPONSE**: Parkdale objects to Request for Production of Documents No. 28 on the grounds that it calls for information prepared in anticipation of litigation and is therefore protected as work-product under Rule 26(b)(3) of the Federal Rules of Civil Procedure. Any experts retained in the Civil Antitrust Litigation were retained by Parkdale's counsel as consulting experts and were never designated as testifying witnesses. Therefore, any information exchanged with those experts is work product, which Parkdale has not waived. In addition, the damages Parkdale paid in settlement of In Re Cotton Yarn Antitrust Litigation, No. 1:04-MD-01622 is a matter of public record. Travelers was given the opportunity to participate in those settlement discussions and chose not to do so. Travelers is therefore estopped from challenging the amount paid in that settlement – an amount that is more than twice the coverage limits of the Travelers policy. As such, the information provided to Parkdale's consultants in that litigation and the opinions they formed are irrelevant to the present coverage dispute. Plaintiffs do not have any non-privileged responsive documents and move for a Protective Order with regard to any further response to this Request.

**Request to Produce 32.** All documents referring, reflecting or relating to discussions or meetings between or among any directors of Parkdale, including, but not limited to, meetings of the Board of Directors or any committee or subgroup of

9

the Board of Directors, such as a Special Litigation Committee, regarding the defense or settlement of the Underlying Matters, or allocation of liability between or among Parkdale and any other parties to the Underlying Matters, including, but not limited to, minutes and summaries of such discussions or meetings, reports, and board resolutions proposed and/or passed relating to the Underlying Matters.

**RESPONSE**: Plaintiffs object to Request for Production of Documents No. 32 to the extent that it calls for documents reflecting the advice of counsel, and are therefore protected by the attorney-client privilege. Subject to the objections and the Protective Order, Parkdale states that it is in the process of reviewing meeting minutes and will produce non-privileged, responsive documents if any are located.

**SUPPLEMENTAL RESPONSE**: Please see the documents produced in response to other Requests.

In sum, the Defendants seek discovery of information and documents related to several central and potentially dispositive factual issues. Concerning whether coverage is barred because an "Insured" had knowledge of the Plaintiffs' involvement in the price-fixing conspiracy prior to August 26, 2002, the date the insurance policy was renewed, for example, the Defendant seeks evidence material to whether and when the Plaintiffs or any of their officers or directors (which are the "Insureds" defined in the contract) knew about Mr. Smeak's or any other person's involvement in the underlying price-fixing conduct. See Interrogatories No. 10 and 12; and Requests to Produce No. 3, 21, 22 and 27.

In light of counsel's on the record discussion during the hearing, including Ms. Boyles' acknowledgment on behalf of the Plaintiffs that Mr. Smeak had knowledge of the price-fixing scheme prior to the issuance date, the question of whether Mr. Smeak was one of Plaintiffs' officers is certainly within the realm of relevant, material, and discoverable topics. Although Mr. Smeak had the titles of "Vice-President" and "President of Sales," he contended in his deposition that he was unaware that he was an officer and maintained, regardless of his job titles, that he did not

10

function as an officer.  See Interrogatories No. 10, 12, and 13; and Requests to Produce No. 3 and 27.

The Defendant also seeks to conduct discovery concerning its "notice" defense, that is, whether the Plaintiffs provided the Defendant timely notice of their claim under the terms of the insurance contract. Toward this end the Defendant seeks to determine when the Plaintiffs first considered the possibility that the policy might cover their exposure in the underlying antitrust actions and the reasons the Plaintiffs did not sooner make a claim. See Interrogatories No. 10, 12 and 13; and Requests to Produce No. 3, 14, 21 and 22.

Concerning the settlement itself, the Defendant seeks to discover the manner in which the parties to the underlying litigation arrived at the settlement figure and whether and to what extent the $7.8 million dollar settlement was a compensable "loss" as that term is defined in the insurance contract as opposed to being unrecoverable restitution or unlawful profits.  See Interrogatories No. 10-12, and 15; and Requests to Produce No. 3, 18, 19, 21, 22 and 28.

As Ms. Boyles explained during the hearing, the Plaintiffs' objections to responding fully to the above-quoted discovery requests generally fall into two categories: first, the Plaintiffs argue that the information sought is not "relevant" to the issues in this case; and second, even if relevant, that the requested information and documents are protected by attorney/client and/or attorney work product privilege.  Counsel for the Plaintiffs conceded, however, that at least some responsive documents generated by the Plaintiffs in the ordinary course of business may have been taken by Reed Smith, LLP during the antitrust investigation and remain in their possession.  Some of the otherwise arguably privileged information may have also been disclosed to third parties (e.g., opposing counsel and parties in the underlying antitrust actions), in a manner which would constitute

11

waiver, thus rendering formerly protected material presently discoverable.

Although the Plaintiffs had raised an objection in their briefs to producing unidentified but admittedly non-privileged emails on the grounds of undue burden and expense ($20,000 to convert the emails into a searchable format), the parties' counsel explained that those emails were actually Mr. Smeak's emails, which now <u>have</u> been produced and at a lesser (and shared) cost. Responding to defense counsel's argument that there was very little useful information in those emails, Ms. Boyles renewed Plaintiffs' objection as to other emails, that is, those authored or received by Parkdale's other officers or employees (including Andy Warlick and Duke Kimbrell) on the grounds of relevance and the burden and cost of searching them for privileged information.

The parties' Motions are now ripe for determination.

## II. <u>DISCUSSION</u>

Rule 26(b)(1) of the Federal Rules of Civil Procedure provides that:

> Parties may obtain discovery regarding any matter, not privileged, which is relevant to the subject matter involved in the pending action, whether it relates to the claim or defense of the party seeking discovery or to the claim or defense of any other party, including the existence, description, nature, custody, condition, and location of any books, documents, or other tangible things and the identity and location of persons having knowledge of any discoverable matter. The information sought need not be admissible at the trial if the information sought appears reasonably calculated to lead to the discovery of admissible evidence.

The rules of discovery are to be accorded broad and liberal construction. <u>See</u> <u>Herbert v. Lando</u>, 441 U.S. 153, 177 (1979); <u>and</u> <u>Hickman v. Taylor</u>, 329 U.S. 495, 507 (1947). However, a litigant is not entitled to conduct discovery that is intended to harass, annoy, embarrass, or oppress the opposing party. <u>See</u> Fed. R. Civ. P. 26(c).

Concerning the Plaintiffs' contention that production of electronically-stored information and

documents will impose undue burden and cost due to its electronic format, following amendment

on December 1, 2006, Fed. R. Civ. P. 26(b)(2)(B) provides:

> A party need not provide discovery of electronically stored information from sources that the party identifies as not reasonably accessible because of undue burden or cost. On motion to compel discovery or for a protective order, the party from whom discovery is sought must show that the information is not reasonably accessible because of undue burden or cost. If that showing is made, the court may nonetheless order discovery from such sources if the requesting party shows good cause, considering the limitations of Rule 26(b)(2)(C). The court may specify conditions for the discovery.

Accord  Zubulake v. UBS Warburg, LLC, 217 F.R.D. 309, 316 (S.D.N.Y. 2003) (discussing

complications and expense in discovery where electronic evidence is contained only on "expensive-

to-restore backup media"; following restoration and search of 5 sample backup disks, at an expense

of $19,000, requiring requesting party to pay 25% of cost of restoration of remaining 72 backup

disks); Rowe Entm't, Inc., v. William Morris Agency, Inc., 205 F.R.D. 421, 429 (S.D.N.Y. 2002)

(applying balancing test); and McPeek v. Ashcroft, 202 F.R.D. 31, 33-34 (D.D.C. 2001) (same).

Fed. R. Civ. P. 26(b)(2)(C) states:

> The frequency or extent of use of the discovery methods otherwise permitted under these rules and by any local rule shall be limited by the court if it determines that: (I) the discovery sought is unreasonably cumulative or duplicative, or is obtainable from some other source that is more convenient, less burdensome, or less expensive; (ii) the party seeking discovery has had ample opportunity by discovery in the action to obtain the information sought; or (iii) the burden or expense of the proposed discovery outweighs its likely benefit, taking into account the needs of the case, the amount in controversy, the parties' resources, the importance of the issues at stake in the litigation, and the importance of the proposed discovery in resolving the issues. The court may act upon its own initiative after reasonable notice or pursuant to a motion under Rule 26(c).

Whether to grant or deny a motion to compel is generally left within the district court's broad

discretion.  See, e.g., Lone Star Steakhouse & Saloon, Inc. v. Alpha of Va., Inc., 43 F.3d 922, 929

(4th Cir. 1995) (district courts' rulings on discovery motions reviewed on appeal for abuse of discretion); Erdmann v. Preferred Research Inc., 852 F.2d 788, 792 (4th Cir. 1988) (noting district court's substantial discretion in resolving motions to compel); and LaRouche v. National Broadcasting Co., 780 F.2d 1134, 1139 (4th Cir. 1986) (same).  However, regarding cases such as this, where work product doctrine and attorney-client privilege are raised in objection to a discovery request, the Fourth Circuit "review[s] the district court's decision that certain documents are subject to privilege de novo, since it involves a mixed question of law and fact." Chaudhry v. Gallerizzo, 174 F.3d 394, 402 (4th Cir.), cert. denied, 120 S. Ct. 215 (1999).  Accord In re Grand Jury Proceedings, 33 F.3d 342, 353 (4th Cir. 1994).

> Concerning the work product doctrine specifically, Fed. R. Civ. P. 26(b)(3), provides:
>
> Trial Preparation: Materials ... [A] party may obtain discovery of documents and tangible things otherwise discoverable ...  and prepared in anticipation of litigation or for trial by or for another party or by or for that other party's representative (including the other party's attorney, consultant, surety, indemnitor, insurer, or agent) only upon a showing that the party seeking discovery has substantial need of the materials in the preparation of the party's case and that the party is unable without undue hardship to obtain the substantial equivalent of the materials by other means. In ordering discovery of such materials when the required showing has been made, the court shall protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation.

The party asserting work product protection has the burden of proving that the disputed items are privileged, which is intended to prevent a litigant from taking a free ride on the research and thinking of his opponent's lawyer and to avoid the resulting deterrent to a lawyer's committing his thoughts to paper.  See, e.g.,  United States v. Nobles, 422 U.S. 225, 236-39 (1975); Taylor, 329 U.S. at 510-11; and U.S. v. Bornstein, 977 F.2d 112, 117 (4th Cir. 1992), citing  United States v. Powell, 379 U.S. 48, 58 (1964).

14

As the Fourth Circuit has described the work product doctrine:

Under the work product rule, codified in Fed. R. Civ. P. 26(b)(3), an attorney is not required to divulge, by discovery or otherwise, facts developed by his efforts in preparation of the case or opinions he has formed about any phase of the litigation .... Fact work product is discoverable only upon a showing of both a substantial need and an inability to secure the substantial equivalent of the materials by alternate means without undue hardship. Opinion work product is even more carefully protected, since it represents the thoughts and impressions of the attorney....An attorney's thoughts are inviolate, ... and courts should proceed cautiously when requested to adopt a rule that would have an inhibitive effect on an attorney's freedom to express and record his mental impressions and opinions without fear of having these impressions and opinions used against the client. As a result, opinion work product enjoys a nearly absolute immunity and can be discovered only in very rare and extraordinary circumstances.

Chaudhry, 174 F.3d at 403 (internal citations omitted) (emphasis added). Accord In re Grand Jury Proceedings, 33 F.3d at 348; and In re Doe, 662 F.2d 1073, 1077-80 (4th Cir. 1981).

In order to qualify as privileged work product, the document must be prepared "because of the prospect of litigation when the preparer faces an actual claim or a potential claim following an actual event or series of events that reasonably could result in litigation." National Union Fire Ins. Co. of Pittsburgh, Pa. v. Murray Sheet Metal Co., Inc., 967 F.2d 980, 984 (4th Cir. 1992). The fact that litigation may result or that litigation in fact ensues at some future date is generally considered insufficient. Id.

The attorney-client privilege is intended to encourage those who find themselves in actual or potential legal disputes to be candid with lawyers who advise them, and is one of the oldest recognized privileges protecting confidential communications. See Upjohn Co. v. United States, 449 U.S. 383, 389 (1981); and Hunt v. Blackburn, 128 U.S. 464, 470 (1888). The attorney-client privilege is intended to encourage "full and frank communication between attorneys and their clients and thereby promote broader public interests in the observance of law and the administration of

15

justice." Upjohn, 449 U.S. at 389. Accord Swidler & Berlin v. U.S., 524 U.S. 399, 404 (1998).

When the privilege applies, it affords confidential communications between lawyer and client complete protection from disclosure. See Trammel v. United States, 445 U.S. 40, 50 (1980); In re Grand Jury Subpoena, 204 F.3d 516, 519-20 (4th Cir. 2000); and Hawkins v. Stables, 148 F.3d 379, 383 (4th Cir. 1998). This protection applies to communications between a corporate party and its in-house counsel, as well as to communications with a privately-retained attorney. See Upjohn, 449 U.S. at 389-90.

It is well established that the attorney-client privilege extends not only to documents authored by an attorney but also to information and queries submitted to him by his client. Upjohn, 449 U.S. at 390 (attorney-client privilege "exists to protect not only the giving of professional advice to those who can act on it but also the giving of information to the lawyer to enable him to give sound and informed advice"); and In re Allen, 106 F.3d 582, 601 (4th Cir. 1997) (applying Upjohn).

Applying these legal principles to the facts in this case, the undersigned concludes that the Defendant is entitled to discover a significant portion, but not all, of what it seeks, and accordingly, that both the Defendant's Motion to Compel and the Plaintiffs' Motion for Protective Order should be granted in part and denied in part.

At the outset, the undersigned finds that each of the subject Interrogatories and Requests to Produce "appear[] reasonably calculated to lead to the discovery of admissible evidence," including on the pivotal issues of whether Mr. Smeak was one of the Plaintiffs' officers; whether and when he or any other Parkdale officer or director had knowledge of price-fixing by Mr. Smeak or any other person whose activities could be attributed to the Plaintiffs; the facts relevant to Plaintiffs' delay in asserting its claim under the insurance policy; and whether and to what extent the $7.8 million

settlement constituted damages, restitution, or disgorgement of unlawful profits. In other words, absent a valid privilege or an undue burden or expense in production sufficient to override the Defendant's right to conduct otherwise reasonable discovery, the Plaintiffs must respond fully to those discovery requests.

Concerning the Plaintiffs' contention that producing the emails of officers and employees other than Mr. Smeak will constitute an undue burden and expense, particularly to review them for privilege, the undersigned finds that these documents may include relevant and material evidence not only as to whether and when Mr. Smeak or any of Plaintiffs' other officers/employees knew of the price-fixing scheme, but also as to whether Mr. Smeak was, as his titles clearly suggest, one of Plaintiffs' officers. Nor have the Plaintiffs met their burden of establishing that these emails are "not reasonably accessible because of undue burden or cost," Fed. R. Civ. P. 26(b)(2)(B), particularly in light of the Court's ability to apportion costs between the parties in appropriate cases. Accord Zubulake, 217 F.R.D. at 316 (discussing complications and expense in discovery where electronic evidence is contained only on "expensive-to-restore backup media"; following restoration and search of 5 sample backup disks, at an expense of $19,000, requiring requesting party to pay 25% of cost of restoration of remaining 72 backup disks); Rowe Entm't, Inc., 205 F.R.D. at 429 (applying balancing test to apportion costs concerning production from backup media); and McPeek, 202 F.R.D. at 33-34 (same).

According to the Plaintiffs' briefs, the disputed emails are presently in LotusNotes format, rather than in a less accessible backup media. Although the Plaintiffs did not offer during the hearing a specific cost projection for converting and searching the subject emails, they contended in their briefs that the cost of producing Mr. Smeak's emails was no more than $20,000, a fraction

17

of the expense at issue in <u>Zubulake</u>, 217 F.R.D. at 316, where the cost of producing 5 sample disks alone was $19,000. Taking into account the factors listed in Fed. R. Civ. 26(b)(2)(C)(iii), including the amount in controversy ($3 million policy limit less $280,319.00 previously paid to reimburse Plaintiffs for a portion of their costs of defense), the parties' apparent resources, and the importance of the proposed discovery in resolving critical factual issues, the Plaintiffs have not articulated a sufficient basis to relieve them of the obligation to produce these emails. Accordingly, the Plaintiffs' objections to producing these documents, as expressed in their briefs and renewed in a modified fashion during the hearing, are <u>overruled</u>.

The Plaintiffs have established, however, that a significant portion of the otherwise responsive information and documents are or may be protected by the attorney/client or work product privileges, or by both. Concerning information and documents which were prepared because of the prospect of litigation, but do not constitute confidential communications between Reed Smith and the Plaintiffs, the Plaintiffs have properly asserted the work product privilege. <u>Accord</u> Fed. R. Civ. P. 26(b)(3); <u>Chaudhry</u>, 174 F.3d at 403; <u>and</u> <u>National Union Fire Ins. Co. of Pittsburgh, Pa.</u>, 967 F.2d at 984. The undersigned finds, however, that to the extent that the information or documents contain only fact, rather than opinion, attorney work product, the Defendant has met its burden of compelling production notwithstanding the privilege. <u>Accord</u> <u>Chaudhry</u>, 174 F.3d at 403 ("[f]act work product is discoverable only upon a showing of both a substantial need and an inability to secure the substantial equivalent of the materials by alternate means without undue hardship").

Indeed, defense counsel credibly argue that while the Plaintiffs have already produced a substantial volume of documents, the produced material to date contains scant or no information concerning the crucial facts in this case, that is, the Plaintiffs' officers' knowledge of price-fixing

activity, if any; whether Mr. Smeak was a corporate officer; the facts relevant to the Plaintiffs' ten month delay in notifying the Defendant that they were seeking insurance coverage; and information, if any, as to whether the $7.8 million settlement should be construed as damages, restitution, or profits to which Plaintiffs were not entitled.   Nor does it appear from the record that the Defendant could acquire this information from any other source. Accordingly, to the extent that the Plaintiffs or Reed Smith, LLP possesses otherwise responsive information or documents, the Plaintiffs must identify that information and produce the documents, notwithstanding the presence of fact work product. Examples of information and documents that must be produced include but are not limited to any information or documents that were removed from the Plaintiffs' possession by Reed Smith during its investigation, other facts that were developed by Reed Smith during its investigation, facts that were disclosed to opposing parties or their counsel in the underlying antitrust lawsuits, and facts related to the underlying settlement.   However, the Plaintiffs are <u>not</u> required to produce any surviving drafts of the Settlement Agreement, which in any event Plaintiffs' counsel have represented no longer exist.

The Plaintiffs may redact from this production any information that amounts to opinion work product. <u>Accord</u>  <u>Chaudhry</u>, 174 F.3d at 403  ("[o]pinion work product enjoys a nearly absolute immunity and can be discovered only in very rare and extraordinary circumstances").   In other words, the Plaintiffs are entitled to a protective order preventing the Defendant from conducting further discovery concerning the opinions of its counsel and experts engaged by counsel or on advice of counsel, to the extent that those opinions have not been previously disclosed to the DOJ or in the underlying lawsuits.

Finally, the confidentiality of communications between the Plaintiffs and their counsel must

be preserved inviolate. <u>Accord</u> <u>Upjohn</u>, 449 U.S. at 389-90 (attorney client privilege applies to communications between a corporate party and its in-house counsel and privately-retained attorney); <u>Trammel</u>, 445 U.S. at 50; <u>In re Grand Jury Subpoena</u>, 204 F.3d at 519-20 <u>and</u> <u>Hawkins v. Stables</u>, 148 F.3d at 383. Accordingly, to the extent there are communications between the Plaintiffs and their counsel that are responsive to the subject discovery requests, but which to date have remained confidential, the Defendant's Motion to Compel will be <u>denied</u> and the Plaintiffs' Motion for Protective Order will be <u>granted</u>. Concerning communications which were initially confidential but have since been disclosed to a third party, for example, information that has been revealed to or discussed in the presence of opposing counsel or parties in the underlying antitrust actions, the privilege no longer applies, that is, the Plaintiffs must identify and produce them.

### III. <u>ORDER</u>

**NOW THEREFORE, IT IS HEREBY ORDERED:**

1. The Defendant's "Motion to Compel Discovery Responses" (document #19) and Plaintiffs' "Motion for Protective Order" (document #29) are **GRANTED IN PART** and **DENIED IN PART**, that is:

A. <u>On or before January 10, 2008 the Plaintiffs shall serve complete supplemental discovery responses to Interrogatories No. 10-13 and 15, and Requests to Produce No. 3, 14, 18, 19, 21, 22, 27, 28, and 32, as detailed above, provided that the Plaintiffs may redact all opinion attorney work product and confidential communications between themselves and their counsel from said responses.</u>

B. The Plaintiffs are **GRANTED** a Protective Order prohibiting the Defendant from conducting further discovery concerning the Plaintiffs' counsels' opinion work product and/or

20

confidential communications between the Plaintiffs and their counsel.

C. If the Plaintiffs conclude that the costs of complying with this Order should be shared by the Defendant, counsel shall first make a good faith effort to agree on an apportionment of the costs as they did regarding the costs of producing Mr. Smeak's emails. Should counsel not be able to reach an agreement, however, Plaintiffs may file a Motion and the Court, applying the factors identified in <u>Zubulake</u>, 217 F.R.D. at 316, will decide whether and to what extent the subject costs should be allocated.

D. The parties' Motions are **DENIED** in all other respects.

2. The Clerk is directed to send copies of this Memorandum and Order to counsel for the parties; <u>and to the Honorable Martin K. Reidinger</u>.

**SO ORDERED.**

Signed: November 19, 2007

*Carl Horn, III*
_____

Carl Horn, III
United States Magistrate Judge

21